MAXWELL, J.,
dissenting:
¶ 54. The majority recognizes “[t]his is clearly a premises-liability case.” And it also correctly notes “duty is a question of law.” Maj. Op. (¶¶ 14, 18). So I am unsure why it latches onto a now-premises liability case, Rein v. Benchmark Construction Co., 865 So.2d 1134 (Miss.2004), *98 to justify its holding that 21 Apartments owed no duty as a matter of law.
¶ 55. In Rein, the question of duty was truly a question — given the quite tenuous relationship between the injured party and the defendant.[10] But here, the duty 21 Apartments owed' to its business invitees “is well-settled under Mississippi law.” Karpinsky v. Am. Nat’l Ins., 109 So.3d 84, 89 (¶ 12) (Miss.2013). A business owner owes its invitees the duty to keep its premises in a reasonably safe condition. Id. And as part of this duty, a business owner must protect its invitees from injuries at the hand of others that are reasonably foreseeable. Kroger Co. v. Knox, 98 So.3d 441, 444 (¶ 16) (Miss.2012); see also Corley v. Evans, 835 So.2d 30, 38 (¶ 22) (Miss.2003); Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991).
¶ 56. In determining if a third-party injury is “reasonably foreseeable,” trial judges are not without guidance. According to the supreme court, a third-party-inflicted injury is reasonably foreseeable if there is “cause to anticipate the wrongful or negligent act” of that third party. Corley, 835 So.2d at 38 (¶ 23) (quoting Grisham v. John Q. Long V.F.W. Post, 519 So.2d 413, 416 (Miss.1988)). This “requisite cause” for anticipating the assault may arise from two types of knowledge — “(1) actual or constructive knowledge of the assailant’s violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises.” Kroger, 98 So.3d at 443 (¶ 14) (quoting Lyle, 584 So.2d at 399).
¶ 57. So in this case, the pertinent question of law — Did 21 Apartments owe Andreas a duty to protect him against Batiste? — is answered by precedent. Under Mississippi tort law, 21 Apartments owed Andreas a duty if it had either actual or constructive knowledge of Batiste’s violent nature. To prove this duty exists, the Galanises must factually prove 21 Apartments had actual or constructive knowledge of Batiste’s violent nature. This is all they had to show to trigger 21 Apartments’ duty to protect Andreas. Cf. Karpinsky, 109 So.3d at 89 (¶ 12).
¶ 58. Since the Galanises were opposing summary judgment, their burden of proof is really best described as a “burden of production.” See id. at (¶ 13). What that means is that, to survive summary judgment, the Galanises needed only produce sufficient evidence to establish the essential duty element. See id. at (¶ 17). And I agree with Judge Griffis that the Galanises met their burden of production. See Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983) (“[T]he party against whom the summary judgment has been sought should be given the benefit of every reasonablé doubt.”).
¶ 59. The apartment’s complaint form showed Batiste had previously documented his anger over a run-in with a past roommate. As Batiste put it, “I can’t take it anymore. I don’t want to get violent.... *99 I hope [my personal issues with my roommate] get resolved soon because I really don’t want to take matters into my own hands.” (Emphasis added).
¶ 60. I do agree with the majority that neither the trial judge nor this court on de novo review may focus solely on the complaint form without considering all evidence presented. But Rule 66 requires all evidence be viewed in the light most favorable to the Galanises. See Karpinsky, 109 So.3d at 88 (¶ 9). And when this form is viewed in the light most favorable to them, I find it is sufficient to show 21 Apartments was either actually or constructively on notice about Batiste’s violent nature.
¶ 61. Because I find the Galanises met their burden of production on the duty element, I would reverse the grant of summary judgment and remand this case for further proceedings.
GRIFFIS, P.J., JOINS THIS OPINION. JAMES, J., JOINS THIS OPINION IN PART.

. In Rein, the question of duty was unsettled, because the facts were so unusual — the family of a nursing-home patient, who died from fire-ant bites, sued the construction company that had built the nursing home two years earlier, claiming a causal link between the home’s construction and the fire-ant infestation. Rein, 865 So.2d at 1137 (¶ 3-4). The construction company argued it could not have reasonably foreseen its actions could have somehow led to a patient dying from fire-ant bites, and thus it owed no duty to protect that patient. Id. at 1139 (¶ 13). The supreme court agreed, concluding the construction company “may have reasonably foreseen an insect infestation as a result of improper construction techniques and poor planning of the drainage system[,]” but "could not reasonably foreseen that [a resident] would be attacked and killed by fire ants two years after construction of the [nursing home].” Id. at 1146 (¶ 40).